UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT L. WILKENS, JR.,

        Petitioner,

v.                                                                             CASE NO. 07-11216
                                                          HONORABLE DENISE PAGE HOOD
BLAINE LAFLER,

        Respondent.
_____/

**OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION,
GRANTING IN PART A CERTIFICATE OF APPEALABILITY,
AND GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Petitioner Robert L. Wilkens, Jr., has filed a *pro se* habeas corpus petition under 28 U.S.C. § 2254. The petition challenges Petitioner's conviction for first-degree criminal sexual conduct. The Court has concluded from a review of the pleadings and record that Petitioner is not entitled to the relief he seeks. Accordingly, the habeas petition is denied.

**I. BACKGROUND**

Petitioner initially was charged in separate cases with sexually assaulting two prostitutes, whom the Court will refer to as Mary or Mary C. and Vicki or Vicki H. The cases were consolidated for purposes of the preliminary examination and trial, but the case against Vicki H. was dismissed when she failed to testify at Petitioner's trial. Her testimony from the preliminary examination was read into the record at trial.

The charge involving Mary C. arose from allegations that Petitioner held a knife at Mary's throat and forced her to perform oral sex on him. Petitioner denied the allegation.

His defense was that Mary was not a credible witness. He implied that Mary fabricated the charge against him to extort money from him to finance her drug habit and because one of his female friends physically assaulted her on one occasion.

On May 11, 2004, a Washtenaw County Circuit Court jury found Petitioner guilty, as charged, of first-degree criminal sexual conduct. *See* Mich. Comp. Laws § 750.520b(1)(e)(sexual penetration while the actor is armed with a weapon). The trial court sentenced Petitioner to imprisonment for twenty-eight years and one month to sixty years. The Michigan Court of Appeals affirmed Petitioner's conviction, *see People v. Wilkens*, No. 260031 (Mich. Ct. App. Aug. 8, 2006), and on December 29, 2006, the Michigan Supreme Court denied leave to appeal. *See People v. Wilkens*, 477 Mich. 979; 725 N.W.2d 334 (2006).

Petitioner filed his habeas corpus petition on March 21, 2007. The grounds for relief are:

    I.     Confrontation Clause violation where due diligence was not shown in producing witness Vicki [H.] for trial.

    II.    Petitioner's constitutional right to the presumption of innocence and a fair and impartial jury trial were violated if the jury learned he was imprisoned and/or if they engaged in premature deliberations.

    III.   Petitioner's constitutional right to be present at trial, to be represented by counsel, and to a fair and impartial jury trial were violated when the judge had ex-parte communication with the jury absent defense counsel.

    IV.   Petitioner's constitutional right against self-incrimination, effective asst. of counsel, Due Process, and a fair trial were violated as a result of a Miranda violation. Prosecutorial misconduct to use statements.

    V.    Due Process violation where the Court relied on a "any

> evidence" standard in scoring offense variables to increase Petitioner's length of sentence.

## II. STANDARD OF REVIEW

A state prisoner is entitled to the writ of habeas corpus only if the state court's adjudication of his or her claims on their merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000) (Justice O'Connor's majority opinion on Part II).  A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id*., 529 U.S. at 413.

## III. DISCUSSION

### A. The Prosecution's Failure to Produce Vicki H.

As noted, the prosecutor initially charged Petitioner with sexually assaulting Vicki H. When the prosecution team was unable to locate Vicki and produce her at trial, the trial

court permitted the prosecutor to read Vicki's testimony from Petitioner's preliminary examination. Petitioner alleges that the prosecutor's failure to produce Vicki H. at trial violated Michigan Rule of Evidence 804(a)(5), as well as, his constitutional right to confront the witnesses against him and his constitutional right to due process of law.

The Michigan Court of Appeals stated on review of this claim that the constitutional right to confront one's accusers is not violated by the use of preliminary examination testimony as substantive evidence at trial if the prosecution exercised due diligence to produce the absent witness. The Court of Appeals then analyzed the prosecution's efforts to find and produce Vicki H. and concluded that the trial court did not abuse its discretion in finding that the prosecution used due diligence to locate Vicki.

The alleged violation of the Michigan Rules of Evidence does not state a cognizable claim on habeas corpus review, because, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 68, 112 S. Ct. 475, 116 L.Ed. 2d 385 (1991). Federal courts may not grant the writ of habeas corpus on the basis of a perceived error of state law. *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 79 L. Ed. 2d 29 (1984).

Petitioner's claim under the Confrontation Clause states a cognizable claim. *See Danner v. Motley*, 448 F.3d 372, 377 (6th Cir. 2006) (explaining that the Confrontation Clause of the Sixth Amendment "guarantees to a criminal defendant the right 'to be confronted with the witnesses against him.'"). "Where testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). "Testimonial evidence" includes "prior testimony at a

4

preliminary hearing . . . ." *Id.*, 541 U.S. at 68.

Petitioner's trial attorney had an opportunity to cross-examine Vicki H. at the preliminary examination, and she was unavailable at Petitioner's trial due to her failure to appear and the prosecution's inability to locate her. Therefore, Petitioner's right of confrontation was not violated, and the decision of the Michigan Court of Appeals was not contrary to, or an unreasonable application of, *Crawford*.

As for Petitioner's claim that the admission of Vicki H.'s testimony violated his right to due process, "[t]rial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004). It was not fundamentally unfair to read Vicki H.'s prior testimony into the record because the evidence was relevant to show a plan or scheme of doing an act. Mich. R. Evid. 404(b)(1). Petitioner therefore is not entitled to habeas relief on the basis of his first claim.

### B. The Presumption of Innocence

According to Petitioner, an alternate juror informed Petitioner's trial attorney after the jury announced its verdict that the jurors deliberated extensively while the parties were still presenting their proofs. The alternate juror also informed defense counsel that the jurors saw leg irons in the jury box and that they concluded from the presence of correctional officers in the courtroom that Petitioner was a prisoner. Petitioner claims that his constitutional right to the presumption of innocence and to a fair and impartial jury trial were violated by the jurors' premature deliberations and by their knowledge that he was imprisoned as a result of a prior conviction.

The Michigan Court of Appeals determined that the trial court did not abuse its discretion in denying a new trial on the basis of the jurors seeing shackles and guards in the courtroom. The Court of Appeals rejected Petitioner's claim about the jurors' premature deliberations because Petitioner failed to establish any prejudice.

### 1. Shackles

Compelling a defendant to go to trial in prison attire can impair the presumption of innocence, which is so basic to our adversary system. *Estelle v. Williams,* 425 U.S. 501, 504-05, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). Use of visible shackles at trial generally is forbidden under the Constitution. *Deck v. Missouri*, 544 U.S. 622, 624, 626, 125 S. Ct. 2007, 161 L.Ed. 2d 953 (2005).

Petitioner, however, was dressed in civilian clothes during trial and was never seen wearing shackles or cuffs. (Tr. Mot. Hr'g, Aug. 25, 2004, at 6-7, 17.) The jury venire may have seen Petitioner in prison garb on his way into the courthouse on the first day of trial. (Tr. May 10, 2004, at 4.) However, "the Supreme Court has not held that a defendant's constitutional rights are violated when jurors see him shackled during transport to or from the courtroom," and "[t]here is . . . authority from [the Sixth Circuit] to the contrary." *Mendoza v. Berghuis*, 544 F.3d 650, 655-56 (6th Cir. 2008), *cert. denied*, __ U.S. __, 129 S. Ct. 1996, 173 L.Ed.2d 1096 (2009). "[J]urors may well *expect* criminal defendants . . . to be restrained during transport to the courtroom." *Id*. at 655 (emphasis in original). Consequently, even if the jurors saw Petitioner shackled during transport, the presumption of innocence was not necessarily impaired.

### 2. Guards

Petitioner's trial attorney has indicated in an affidavit that there were two uniformed

6

officers employed by the Michigan Department of Corrections seated directly behind and on either side of Petitioner during trial. Although Petitioner contends that the officers' presence deprived him of the presumption of innocence, the Supreme Court has stated that the presence of uniformed guards in a courtroom during trial is not inherently prejudicial. *See Holbrook v. Flynn*, 475 U.S. 560, 568-69, 106 S. Ct. 1340, 89 L.Ed.2d 525 (1986). All that a federal court may do on habeas review of a claim regarding the presence of uniformed guards in a courtroom "is look at the scene presented to [the] jurors and determine whether what they saw was so inherently prejudicial as to pose an unacceptable threat to [the] defendant's right to a fair trial; if the challenged practice is not found inherently prejudicial and if the defendant fails to show actual prejudice, the inquiry in over." *Id.*, 475 U.S. at 572.

According to Petitioner's trial attorney, the jurors concluded from the correctional officers' presence in the courtroom during Petitioner's trial that Petitioner was a prisoner. There is no evidence, however, that the jurors knew why Petitioner was in prison. Petitioner's contention that the jurors must have concluded he was guilty of a sexual assault on Vicki H. is mere speculation. Furthermore, the trial court charged the jurors not to conclude from evidence of other acts for which Petitioner was not on trial that Petitioner was a bad person or guilty of other bad conduct. (Tr. May 11, 2004, at 256-57.) Petitioner therefore has not demonstrated that he was actually prejudiced by the officers' presence at his trial.

### 3. Premature Deliberations

Petitioner maintains on the basis of what the alternate juror told his attorney that the jury prematurely deliberated his case after they saw shackles in the jury box. The Court of

Appeals for the Sixth Circuit has held that a jury's premature deliberations during trial constitute a potential internal influence on the jury. *See United States v. Logan*, 250 F.3d 350, 381 (6th Cir. 2001). Internal influences on a jury may not be used to challenge the jury's final verdict. *Doan v. Brigano*, 237 F.3d 722, 733 (6th Cir. 2001) (citing *Tanner v. United States*, 483 U.S. 107, 117-21, 107 S. Ct. 2739, 97 L. Ed. 2d 90 (1987)), *abrogated on other grounds by Wiggins v. Smith*, 539 U.S. 510, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003).

The Court notes, moreover, that there is no indication the jury prematurely deliberated the actual verdict in the case. Petitioner argues that the jury probably assumed he was guilty of sexually assaulting Vicki H., who failed to appear at his trial, but this argument is based on mere speculation. His trial attorney, in fact, stated during the hearing on Petitioner's motion for new trial that he did not know whether the jury actually concluded that Petitioner was in custody for an offense involving the unavailable witness. (Tr. Mot. Hr'g, Aug. 25, 2004, at 16.) Because Petitioner has not shown any prejudice from the allegedly premature deliberations, his claim lacks merit.

### C. Ex-Parte Communications

Before the jurors announced their verdict, the trial court stated on the record that the jury did have one "straight-forward" question. The court apparently answered the jurors' question in the parties' absence. The court did not articulate what the jurors' question was or how the court answered the question. The court, nevertheless, asked the attorneys to initial the note. (Tr. May 11, 2004, at 264.)

Petitioner claims that the trial court's *ex parte* communication with the jury in his and his attorney's absence violated his constitutional right to be present at a critical stage of the

proceedings. Petitioner also claims that the trial court violated his right to be represented by counsel and his right to a fair and impartial jury. Petitioner alleges that, after his trial, he learned that the jurors wanted to know the source of Vicki H's prior testimony, which was read into the record. Respondent argues that Petitioner's claim is procedurally defaulted because the Michigan Court of Appeals ruled that Petitioner waived review of his claim by affirmatively approving the trial court's communication with the jury.

### 1. Procedural Default

"[P]rocedural default results where three elements are satisfied: (1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim." *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). All three elements are satisfied here.

First, there is a state procedural rule that requires defendants in criminal cases to preserve an issue by making an objection in the trial court before presenting the claim to the court of appeals. *See People v. Carines*, 460 Mich. 750, 761-64; 597 N.W.2d 130, 137-38 (1999). A defendant may not harbor error as an appellate parachute by waiving objection to an issue in the trial court and then raising the issue as an error on appeal. *People v. Carter*, 462 Mich. 206, 214; 612 N.W.2d 144, 148-49 (2000). Petitioner violated this rule by failing to object at trial to the trial court's *ex parte* communication with the jury. The second element of procedural default (enforcement of the rule) was satisfied when the Michigan Court of Appeals declined to review Petitioner's claim on the merits due to defense counsel's failure to object to the claimed error during trial. The Michigan Court of Appeals

stated that, "by not only failing to object after the trial court's reference to answering the jury's question but then proceeding to sign the note, defense counsel expressed affirmative approval of the trial court's communication with the jury, thereby effecting a waiver of this issue that extinguished any error." *Wilkens*, 2006 WL 2271302, at *3. A state appellate court's finding that the petitioner waived review of an issue constitutes enforcement of a state procedural rule. *See Johnson v. Sherry*, __ F.3d __, __. No. 08-1322, 2009 WL 3789995, at *5 (6th Cir. Nov. 13, 2009).

The third element of procedural default (adequate and independent basis) is satisfied as well. The State's rule on contemporaneous objections and waivers is an independent ground for foreclosing review of Petitioner's claim. *See Carines* and *Carter*. The rule was an adequate basis for the state court's ruling because *Carines* and *Carter* were "firmly established and regularly followed" before Petitioner's trial. *See Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir.1998) (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24, 111 S. Ct. 850, 112 L.Ed.2d 935 (1991)).

To summarize, all three elements of procedural default are present in this case. Petitioner therefore must show "cause for [his] default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider [his] claim[] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### 2. Cause and Prejudice; Miscarriage of Justice

Petitioner alleges that his trial attorney was ineffective for failing to object to the trial court's *ex parte* communication with the jury. Although constitutionally ineffective assistance of counsel is "cause" for a procedural default, the doctrine of exhaustion of state remedies "generally requires that a claim of ineffective assistance be presented to the state courts as

an independent claim before it may be used to establish cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 488-489, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986). On direct review, Petitioner did not raise an independent claim about trial counsel's failure to object to the trial court's *ex parte* communication with the jury. Therefore, he has not shown "cause" for his procedural default. The Court need not determine whether Petitioner was prejudiced by the alleged constitutional errors, because he has failed to show "cause" for his procedural default. *Willis*, 351 F.3d at 746 (citing *Simpson v. Jones*, 238 F.3d 399, 408 (6th Cir. 2000)).

The narrow exception for fundamental miscarriages of justice is reserved for the extraordinary case in which the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388, 124 S. Ct. 1847, 158 L.Ed.2d 659 (2004); *Carrier*, 477 U.S. at 496. To be credible, a claim of actual innocence "requires [the] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995).

Petitioner has not presented any new and credible evidence to support a claim of actual innocence. Consequently, a miscarriage of justice will not occur as a result of the Court's failure to consider the substantive merits of his claim about the trial court's *ex parte* communication with the jury. His claim is procedurally defaulted.

**D. *Miranda v. Arizona*; the Prosecutor's Conduct; Cumulative Effect of Errors**

During the execution of a search warrant at Petitioner's home, a police officer

questioned Petitioner about the assault on Mary C. Petitioner initially denied using prostitutes, but he ultimately admitted that he knew Mary C., had paid her for sex, and had taken her to a field in the area of Whittaker Road. Although he claimed that Mary had "set him up," he was subsequently arrested and taken to the police station where he made a similar statement after being advised of his constitutional rights.

Petitioner alleges that the failure to advise him of his constitutional rights before the police interrogated him at his home violated his constitutional right not to incriminate himself. He also claims that defense counsel was ineffective for failing to file a motion to suppress his comments to the police. The Michigan Court of Appeals opined that a motion to suppress would have been denied because Petitioner was not in custody during the questioning at his home and, therefore, defense counsel was not ineffective for failing to file a motion to suppress.

### 1. Clearly Established Federal Law

The Fifth Amendment to the United States Constitution guarantees an individual the right not to be "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. To protect this right against self-incrimination, the police must warn a suspect prior to questioning him that "he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). This rule applies to custodial questioning, which the Supreme Court has defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.*, 384 U.S. at 444.

The question here is whether Petitioner was in custody when the police questioned him in his home. The United States Court of Appeals for the Sixth Circuit recently explained that,

> [i]n drawing the line between a non-custodial encounter between a citizen and the police (where *Miranda* does not apply) and a custodial encounter (where it does), courts consider "all of the circumstances" surrounding the encounter, with "the ultimate inquiry" turning on whether "a formal arrest" occurred or whether there was a "restraint on freedom of movement of the degree associated with a formal arrest." [*Stansbury v. California*, 511 U.S. 318, 322, 114 S. Ct. 1526, 128 L.Ed. 2d 293 (1994)] (internal quotation marks omitted). To answer this question, courts focus on the "objective circumstances of the interrogation," *id*. at 323, 114 S.Ct. 1526, to determine "how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action," *id*. at 325, 114 S.Ct. 1526 (internal quotation marks omitted). Several factors guide the inquiry: the location of the interview; the length and manner of questioning; whether the individual possessed unrestrained freedom of movement during the interview; and whether the individual was told she need not answer the questions. See *United States v. Swanson*, 341 F.3d 524, 529 (6th Cir. 2003).

*United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009).

### 2. Application

Petitioner's initial interview with the police occurred in his home at 8:30 p.m. during the execution of a search warrant. Petitioner claims that his movements were restricted, but he has not alleged that he was prevented from leaving or from terminating the interview. He also has not alleged that he was treated roughly, handcuffed, or threatened by the display of weapons, and the determination of custody does not depend on his subjective view of the interrogation. *Coomer v. Yukins*, 533 F.3d 477, 485, 487 (6th Cir. 2008) (citing *Stansbury*, 511 U.S. at 323), *cert. denied*, __ U.S. __, 129 S. Ct. 1349, 173 L.Ed. 2d 615 (2009). Furthermore, Petitioner consented to the search of his residence, and Detective Robert Peto testified at trial that Petitioner initially "was very inviting, accommodating, and

13

cooperative." (Tr. May 11, 2004, at 49.) Although the police may not have informed Petitioner that he could terminate the interview and was not required to answer their questions, the Sixth Circuit has found law-enforcement interviews to be non-custodial even when the officers failed to provide this advice. *Panak*, 552 F.3d at 467.

Given the congenial location and cooperative nature of the interview, the Court finds that Petitioner was not "in custody" when he was questioned in his home. A reasonable person in Petitioner's position would not have felt that his freedom was restrained in a manner associated with a formal arrest. Therefore, the police did not violate Petitioner's Fifth Amendment rights, and a motion to suppress his answers to the police officer's questions would have been denied. Defense counsel was not ineffective for failing to file a meritless motion. *Johnson v. Tennis*, 549 F.3d 296, 303 (3d Cir. 2008) (citing *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999)).

### 3.  The Prosecutor

Petitioner maintains that the prosecutor engaged in misconduct by questioning him about his unwarned statements to the police and then asking him to comment on Mary C.'s and Detective Robert Peto's credibility. The Michigan Court of Appeals rejected Petitioner's claim about the prosecutor because defense counsel did not object, nor request a curative instruction, when the prosecutor asked Petitioner to comment on the veracity of the victim and Detective Peto.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). To prevail on his claim, Petitioner must demonstrate that the prosecutor's conduct deprived him of a specific constitutional right or infected his trial with such unfairness as to make the resulting

conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L.Ed.2d 431 (1974). The misconduct must be "'so egregious as to render the entire trial fundamentally unfair.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979)).

Courts must first ask whether the prosecutor's conduct or remarks were improper. *Slagle v. Bagley,* 457 F.3d 501, 515-16 (6th Cir. 2006), *cert. denied*, 551 U.S. 1134, 127 S. Ct. 2977, 168 L.Ed.2d 708 (2007). If the conduct or remarks were improper, a reviewing court must consider whether the improper acts were so flagrant as to warrant reversal. *Id*. at 516. When determining whether a prosecutor's remarks were flagrant, courts consider "(1) the likelihood that the remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) the total strength of the evidence against the defendant." *Bates v. Bell,* 402 F.3d 635, 641 (6th Cir. 2005).

The prosecutor in this case asked Petitioner on cross-examination whether Detective Peto lied when he testified at trial that Petitioner had admitted to having sex with prostitutes and to giving money to Mary C. for sex. Although prosecutors may not ask a witness to comment on the credibility of other witnesses, *United States v. Harrison*, __F.3d __, __, No. 08-10391, 2009 WL 3260550, at *1 (9th Cir. Oct. 9, 2009), Petitioner handled the prosecutor's question very well. He testified that the detective may have been misled or confused, but that Mary C. definitely was not telling the truth. (Tr. May 11, 2004, at 146-49.) Because Petitioner's defense was that Mary C. fabricated the charges against him, the prosecutor's improper question could not have misled the jury or prejudiced Petitioner. Consequently, the prosecutor's improper comment was not so

15

flagrant as to prejudice the defense.

### 4. Cumulative Effect of Errors

Petitioner argues that the cumulative effect of the errors deprived him of a fair trial. The Michigan Court of Appeals stated that any errors did not prejudice Petitioner.

This Court finds no merit in Petitioner's claim because "[t]he Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). Therefore, it cannot be said that the state court's decision was contrary to Supreme Court precedent. Constitutional errors that would not individually support habeas relief simply cannot be cumulated to support habeas relief. *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005).

### E. The Sentencing Guidelines

The fifth and final habeas claim alleges that Petitioner's right to due process of law was violated when the trial court overruled defense counsel's objection to the scoring of offense variables 4 and 10 of the Michigan sentencing guidelines. A state court's interpretation and application of state sentencing laws and guidelines is a matter of state concern only, *Howard v. White*, 76 Fed. Appx. 52, 53 (6th Cir. 2003), and "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S. Ct. 3092, 111 L. Ed. 2d 606 (1990). "A necessary predicate for the granting of federal habeas relief . . . is a determination by the federal court that [the applicant's] custody violates the Constitution, laws, or treaties of the United States." *Rose v. Hodges*, 423 U.S. 19, 21, 96 S. Ct. 175, 46 L. Ed. 2d 162 (1975) (citing 28 U.S.C. § 2241 and *Townsend v. Sain*, 372 U.S. 293, 312, 83 S. Ct. 745, 9 L. Ed. 2d 770 (1963)).

Because Petitioner has not demonstrated that the state courts violated federal law, his claim is not cognizable on habeas review.

## IV. CONCLUSION

The state court's rejection of Petitioner's claims did not result in a decision that was an unreasonable determination of the facts, contrary to clearly established federal law, or an unreasonable application of clearly established federal law as determined by the Supreme Court. Accordingly, the habeas petition [Docket No. 1, filed March 21, 2007] is **DENIED**.

## V. CERTIFICATE OF APPEALABILITY

The remaining issue is whether a certificate of appealability may issue. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. . . . When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). "[A] claim can be debatable even though every jurist of reason might agree, after the [certificate of appealability] has been granted and the case has received full consideration, that [the] petitioner will not prevail." *Miller-El v. Cockrell*, 537 U.S. 322, 338, 123 S. Ct. 1029, 154 L.Ed.2d 931 (2003).

Reasonable jurists would not find the Court's assessment of Petitioner's first and fifth claims debatable or wrong, because the state court's decision on Claim I is not contrary to *Crawford*, and Petitioner's sentencing claim is not cognizable on habeas review.  Reasonable jurists could debate the Court's assessment of Petitioner's second and fourth claims regarding the presumption of innocence and the failure to give *Miranda* warnings.  Consequently, a certificate of appealability may issue on Claims II and IV.  Petitioner's third claim regarding an *ex parte* communication between the trial court and jury is procedurally defaulted, and reasonable jurists would not  find it debatable whether the petition states a valid claim of the denial of a constitutional right and whether the Court's procedural ruling is correct.  A certificate of appealability therefore will not issue on Claim III.   Petitioner may proceed *in forma pauperis* on appeal because an appeal could be taken in good faith.  Fed. R. App. P. 24(a)(4)(B).

                                  S/Denise Page Hood
                                  Denise Page Hood
                                  United States District Judge

Dated:  January 5, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record and Robert Wilkens, Jr., Reg. No. 172045, Michigan Reformatory, 1342 W. Main St., Ionia, MI 48846 on January 5, 2010, by electronic and/or ordinary mail.

                                  S/William F. Lewis
                                  Case Manager